FRANCISCO VILARIÑO MARTÍNEZ, ETC., Appellant, *v.* THE REGISTRAR OF PROPERTY OF PONCE, Respondent.

No. G-63-2.        Decided December 17, 1963.

*Práxedes Álvarez Leandri* for appellant. The registrar appeared by brief.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Francisco Vilariño Martínez is the father with patria potestas over his minor son Francisco Vilariño Rodríguez. The Ponce Real Estate Corporation, of which Vilariño Martínez is secretary, granted a personal loan to minor Vilariño Rodríguez for the purchase of a house and lot, according to

agreement of the Board of Directors of said corporation, which insofar as pertinent provides:

"Pedro Santiago, President of the Ponce Real Estate Corporation, is hereby authorized to grant a personal loan to minor Francisco Vilariño Rodríguez, represented by his father with patria potestas, Frank Vilariño Martínez, for the amount of five thousand seven hundred dollars ($5,700) to purchase lot No. Ten-B of block "E" of Urbanización Villa Grillasca in Barrio Canas in Ponce, with an area of 237.50 square meters, with a reinforced concrete house only one story high, with flat roof and tile floors, consisting of three bedrooms with closets, living-dining room, kitchen with closet, bathroom and porch. The principal due shall be payable to the Ponce Real Estate Corporation at its domicile at the rate of fifty dollars ($50) per month, deducting interest at the agreed rate, remainder to be credited to the outstanding principal until full payment of the debt."

By deed No. 810 executed in San Juan on September 9, 1960 before Notary Francisco Castro Amy, minor Vilariño Rodríguez, represented by his father, acquired by purchase and for the amount of $5,700 from Julián H. Zimmerman, as Federal Housing Commissioner, the property described in the aforesaid contract of the Board of Directors of Ponce Real Estate Corp.

Said deed being presented at the Registry of Property of Ponce, the registrar notified the applicant of defects which precluded the recording and the corresponding legal term having elapsed, he proceeded to return all the papers entering a cautionary notice of 60 days at the margin in the following terms:

"This document is hereby returned and its registration suspended for failure to attach the corresponding judicial authorization required for the transaction executed, pursuant to the provisions of § 159 of the Civil Code and §§ 614 to 616 of the Code of Civil Procedure which regulate the matter, and a cautionary notice of 60 days is entered instead pursuant to Act No. 73 of June 23, 1958. Ponce, September 19, 1962."

In requesting the reversal of the registrar's note, appellant maintains that the previous judicial authorization of the Superior Court was not necessary to execute the transaction by which the minor acquired the real property, free of liens or onerous conditions.

Appellant is not right. Section 159 of the Civil Code (31 L.P.R.A. § 616) provides that the exercise of the patria potestas does not authorize the father or the mother to alienate or lay any encumbrance upon real property of any class whatever, or upon personal property, the value of which exceeds five hundred dollars, pertaining to the child and which may be under the administration of its parents, without the previous authorization of the part of the Superior Court wherein the property is situated and the demonstration of the necessity and utility of the alienation or encumbrance and in accordance with the provisions of the law relative to special legal proceedings.

■ The procedure to obtain authorization over the rights and property of minors is established by §§ 614 to 616 of the Code of Civil Procedure (32 L.P.R.A. §§ 2721 to 2723).

In construing these rules of procedures, and determining their scope and after comparing them with the provisions in force before 1911, we said in *Amy et al.* v. *Heirs of Verges*, 37 P.R.R. 46, 59 (1927), cited with approval in *Lókpez* v. *Fernández*, 61 P.R.R. 503, 538 (1943), the following:

"The obvious purpose of these more recent enactments was not merely to re-establish the rules prescribed by the laws in force at the time of the adoption of our present Code of Civil Procedure and to supply omissions therein, but also to provide additional protection for the rights of minors by conferring upon the court and upon the district attorney powers that they did not have, and by imposing upon them duties and responsibilities that did not exist under the Spanish Civil Code and system of procedure. Otherwise, there was no need and no satisfactory explanation could be given for the modification made in those laws, and the fact of such modification is self-evident.

"The effect of these changes, insofar as the control of the court over the exercise of the *patria potestas* is concerned, *has been to reduce parental authority to the same general level as that of a tutor or guardian.*" (Italics ours.)

Once more we must ratify the preceding doctrine. Guardians are not authorized to borrow money in the name of their wards without the previous judicial authorization. Section 212 of the Civil Code (31 L.P.R.A. § 786). The parents or tutor shall be in need of the previous judicial authorization for the placing or investment to be made of the thing obtained by the minor or incapacitated person through the act or contract referred to in the authorization. Section 614 of the Code of Civil Procedure (32 L.P.R.A. § 2721).

■ Appellant alleges that § 159 of the Code does not forbid parents to borrow money in the name of their minor children under their patria potestas without judicial authorization. That is true if we adhere strictly to the letter of said provision; but if we consider the purpose pursued by the lawmaker in relation to the protection of the minors' interests by the courts established in said section as well as in the procedure to obtain authorization over the rights and property of the minors, we are bound to conclude that the previous judicial authorization for a parent to borrow money in the name of his minor child is indispensable and necessary. Otherwise, the interests of the minors could be prejudiced, by subjecting the minor's property to the payment of loan obligations contracted by his father in his name. This way, what the law directly and expressly forbids could be indirectly achieved. The loan having been executed and not fulfilled, as agreed, the debtor would be liable for its payment with all his properties because as the registrar correctly points out, § 1811 of the Civil Code (31 L.P.R.A. § 5171) provides that "A debtor is liable for the fulfilment of his obligations with all his present and future property." A judicial sale of the minor's property in the execution of

the judgment rendered against him, by virtue of the loan obligation, deprives the minor of his property by a forced sale without a previous judicial determination as to the necessity and utility for the minor of the transaction executed in his name by his father, and the consequences of which, as we have shown, are a forced sale or alienation of his personal and real property. In this indirect manner the father succeeds in selling or alienating the real property of his minor son without judicial authorization, in open violation of § 159 of the Civil Code and the aforecited sections of the Code of Civil Procedure.

Referring to the restrictions which the law imposes on the exercise of patria potestas, we said in *F. Zayas, S. en C.* v. *Torres*, 51 P.R.R. 772, 776 (1937):

"Section 159 of the Civil Code (1930 ed.) provides that the exercise of the patria potestas does not authorize the father or the mother to alienate or lay any encumbrance upon property belonging to a minor *without the previous authorization of the district court*. It seems logical and just to maintain that if for the constitution of a mortgage, which is a secondary obligation, over property of a minor, the previous authorization of the district court is necessary, said previous authorization must be required as a necessary legal requirement for the validity of the principal obligation which is to be secured by the mortgage. The lawmaker has imposed on the district court the duty to ascertain and be convinced of the utility and necessity for the minor of the acts or contracts which are to be executed in his name, before exercising the power conferred upon by law to authorize such acts or contracts. See sections 614 to 616 of the Code of Civil Procedure (1933 ed.). In order to hold that the father or the mother of a minor may borrow money without the previous authorization of the district court and without first showing the necessity and utility for the minor of such transaction; and that the parent can dispose of said money at will; and that such an obligation which is void *ab initio*, may be ratified by a judicial approval granted *a posteriori*, it would be necessary to disregard the spirit of the law and the clear

intention of the legislator, by converting the judicial intervention into an ineffective and empty formality." (Italics ours.)

Although in the present case the loan granted to the minor was not secured by mortgage on the real property which he acquired with the money of the loan, yet that is no reason, as we already saw, why said real property or any other property belonging to the minor should be exempt from liability for the obligations contracted by his father in his name.

This case is an example of the wisdom of the legal provisions which impose on the courts the obligation of investigating and ascertaining the necessity and utility, for the minor, of the acts or contracts which are to be executed in his name. We assume that the father in this case has made a transaction which, in his judgment, is useful and convenient for his son. This determination nevertheless corresponded to the courts and not to the father. Some of the questions which he would be bound to answer in a proceeding for judicial authorization, would be, what rate of interest was stipulated in the loan contract? on what means does the minor rely to pay the principal of the loan in the manner stipulated? what are the risks that the minor may fail to comply with the obligation, and thus jeopardize the property acquired as well as any other property, owned at present, or that he might acquire in the future in the performance of said obligation?

As to the property purchased it will be noted that it is subject to liens (servitude) which the minor accepts and that the purchaser further exonerates the vendor from liability for concealed or apparent defects or defects of any kind in the house object of the contract, or in its electric and plumbing installations. Although said circumstances might not militate against the utility and necessity of the transaction executed by his father in the name of his son, it was incumbent on the court to so determine.

Consequently, we decide that having failed to present at the Registry the document establishing the previous judicial authorization of the acts executed by the father in the name of the son, the registrar's note will be affirmed.